UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

VIRGINIA M. FICHERA,

          Plaintiff,
  - v -
                                                          5:04-cv-0078
STATE UNIVERSITY OF NEW YORK at Oswego,     (NAM)(DEP)

          Defendant.
_____

**APPEARANCES:**                              **OF COUNSEL:**

LINDY KORN, ESQ.
1904 Liberty Building
Buffalo, New York 14202
*Attorney for Plaintiff*

ANNA MARIE RICHMOND, ESQ.
P.O. Box 1215
Buffalo, New York 14213
*Attorney for Plaintiff*

ELIOT SPITZER, ESQ.                              Krista A. Rock, Esq.
Attorney General of the State of New York    Assistant Attorney General
The Capitol
Albany, New York 12224
*Attorney for Defendant*

**MEMORANDUM-DECISION AND ORDER**

**NORMAN A. MORDUE, Chief U.S. District Judge:**

**I.    INTRODUCTION**

    Plaintiff, Virginia Fichera, was employed by the defendant university for approximately seventeen years, between 1985 and 2002, in the Department of Modern Languages. The complaint alleges unlawful discrimination pursuant to 42 U.S.C. § 2000e, *et seq.* ("Title VII") and 29 U.S.C. § 206, *et seq.* (the "Equal Pay Act" or "EPA"). Defendant has moved to dismiss

plaintiff's claims as untimely in the first instance and in the alternative as plead inadequately. Plaintiff opposes this motion.

## II.     **FACTUAL BACKGROUND**

Plaintiff was employed as a professor at SUNY Oswego from 1985 to 2002.  The present complaint alleges that during this time, plaintiff was subjected to three types of alleged discriminatory conduct by defendant: 1) discrimination on the basis of gender in violation of Title VII; 2) retaliation in violation of Title VII; and 3) violation of the Equal Pay Act.  The complaint alleges that plaintiff exhausted her administrative remedies with respect to her Title VII claims by filing three administrative charges of employment discrimination in connection with those claims.

Review of the papers submitted in support and opposition to the present motion reveals the following concerning the administrative procedural history of this case.  On April 18, 1991, plaintiff dual-filed a charge of discrimination ("the 1991 charge") with the New York State Division of Human Rights ("DHR") and the Equal Employment Opportunity Commission ("EEOC").  In this charge, plaintiff, who was then 41 years of age, asserted that SUNY Oswego removed her from her position as French Program Coordinator and replaced her with a man over the age of 50.  Plaintiff contended that SUNY Oswego had replaced her solely on the basis of her sex and age.  Specifically, plaintiff complained that she was discriminated against because she was the youngest Program Coordinator and one of only two females serving the college in this capacity.  Following its investigation of the complaint, DHR issued a finding of probable cause concerning plaintiff's charge on September 30, 1992.  DHR conducted a series of hearings/conferences which concluded on December 1, 2003.  At that time, plaintiff's counsel

requested that DHR dismiss plaintiff's complaint on the ground of administrative convenience so she could pursue an action in federal court. DHR issued the requested Dismissal and Notice of Rights letter on January 5, 2004. It appears from allegations in her administrative complaints that plaintiff was reinstated as French Program Coordinator in the fall of 2000.

Prior to the conclusion of her original administrative proceeding concerning the 1991 charge, plaintiff dual-filed a second charge of discrimination with DHR and EEOC on January 10, 2001, ("the 2001 charge"), in which she alleged she was retaliated against by SUNY Oswego for having opposed discriminatory employment practices by the college. Specifically, plaintiff asserted that SUNY Oswego practiced unlawful employment discrimination against her and others on the bases of race, color, gender and disability. Plaintiff averred that she had requested reasonable accommodation from the college for her own disabilities due to "fibromyalgia, carpal tunnel and related illnesses" and that SUNY Oswego deliberately withheld such accommodation in retaliation for her prior complaints of unlawful discrimination. Plaintiff also contended that she was "denied the privileges and responsibilities" of her position and paid significantly less than a white, male, newly hired professor based on gender discrimination and retaliation for her complaints.[1] DHR issued a determination of "probable cause" on January 31, 2003, concerning the 2001 charge and recommended a public hearing.

It appears that plaintiff subsequently abandoned pursuit of this claim, but then requested that it be "reopened." On July 28, 2003, after a complete investigation of the 2001 charge, DHR issued an order stating there was "no probable cause" to believe SUNY Oswego had engaged in any new illegal employment practices. To wit, DHR determined as follows:

---

[1] There is no evidence in the record which describes plaintiff's color, race or ethnic origin.

> Investigation did not reveal sufficient information to support a belief that complainant was denied equal terms, conditions and privileges of employment because of her disability, race, color, sex or in retaliation for her having opposed discrimination. Investigation revealed that much of complainant's complaint is an attempt to resurrect issues decided in a prior complaint where it was found that her physical disability was reasonably accommodated by respondent. Investigation revealed that males allegedly paid more than her were the department chair and a person with many years more seniority, and that a male colleague somewhat similarly situated received less than complainant. Investigation revealed that the decision as to complainant's scheduling was an academic judgment where it would not be appropriate for the division to substitute its own decision as to what was appropriate. Investigation revealed no fresh evidence of illegal discrimination on the grounds relied on by complainant.

EEOC issued a Dismissal and Notice of Rights letter on November 20, 2003, after adopting the findings of DHR concerning plaintiff's allegations.

Prior to final resolution of the 2001 charge, plaintiff faxed a form entitled "EEOC New Charge Questionnaire - General" to EEOC's regional office in Buffalo, New York on December 19, 2002. This form questionnaire was signed by plaintiff but her signature was undated and unnotarized. Further, plaintiff did not swear or affirm the information in the questionnaire "under penalty of perjury." Indeed, plaintiff's questionnaire was signed under the following pre-printed statement: "I swear or affirm that the information provided is true and correct to the best of my knowledge." In the questionnaire, plaintiff set forth claims of age, gender and disability discrimination, largely repetitive of her prior administrative charges. Specifically, plaintiff asserted that continuously, from 1991 to October 3, 2002, SUNY Oswego subjected her to a hostile work environment, and denied her pay, benefits, reasonable disability accommodations, and other terms of employment on the basis of her sex, age, ethnic origin and alleged disabilities. Further, plaintiff contended that her prior complaints were the basis of retaliatory harassment by

4

SUNY Oswego which ultimately resulted in constructive discharge by way of her early retirement from the college.  In a letter which accompanied the form questionnaire, plaintiff stated she chose to fax her questionnaire "due to the need to file the charge as soon as possible in order to maintain [her] right to include incidents which have occurred in February of this year."  Plaintiff also wrote that she "look[ed] forward to hearing from you in the near future to finalize the official charge."  On January 9, 2003, EEOC forwarded a formal charge to plaintiff and directed her to sign it in front of a notary and return it to the agency "as soon as possible."

Nearly eight months later, on August 13, 2003, plaintiff signed and affirmed the final version of her third administrative charge ("the 2003 charge").  The 2003 charge was received by EEOC on August 15, 2003, and forwarded to SUNY Oswego for a response five days later.  However, on October 31, 2003, EEOC forwarded a Dismissal and Notice of Rights letter to plaintiff which stated that the agency was closing its file on her charge because it "was not timely filed with EEOC; in other words [plaintiff] waited too long after the date(s) of the alleged discrimination to file [her] charge."

Plaintiff filed the present action on January 23, 2004.  Defendant moves to dismiss the complaint in its entirety on the ground that many of plaintiff's claims were not included in her DHR and/or EEOC complaints and thus are either time-barred or not exhausted administratively as required by Title VII.  Defendant also asserts that plaintiff has failed to state sufficiently viable causes of action with respect to any Title VII claim which is arguably exhausted and/or timely.  Finally, defendant submits that plaintiff's EPA claim is limited by the applicable statute of limitations, and that the timely aspect of this claim is insufficient as a matter of law.

### III.    DISCUSSION

A.     Applicable Legal Standard

The standard applicable to a motion to dismiss are well-settled.  On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept the allegations of the complaint as true, and draw all reasonable inferences in favor of the nonmoving party.  *See Grandon v. Merrill Lynch & Co.,* 147 F.3d 184, 188 (2d Cir. 1998); *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir. 1995).  In addition, the Court may not dismiss the complaint unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Nettis v. Levitt,* 241 F.3d 186, 191 (2d Cir. 2001) (quotation omitted).  Therefore, the issue before the Court on such a motion "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *King v. Simpson,* 189 F.3d 284, 287 (2d Cir. 1999) (quoting *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir. 1995)).

Defendant here also moves to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).  Title VII provides that a discrimination claim is time-barred if an administrative complaint is not filed within a prescribed time period.  *See* 42 U.S.C. § 2000e-5(e)(1); *Forsyth v. Fed'n Employment and Guidance Serv*., 409 F.3d 565, 572 (2d Cir. 2005); *Elmenayer v. ABF Freight System, Inc*., 318 F.3d 130, 133 (2d Cir. 2003).  However, it is now well settled that "the failure to exhaust administrative remedies is a precondition to bringing a Title VII claim in federal court, rather than a jurisdictional requirement." *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000) (quoting *Gibson v. West*, 201 F.3d 990, 994 (7th Cir. 2000) (balance of citations omitted).  Presentation of a Title VII claim to the EEOC is properly viewed as a preliminary requirement for bringing a Title VII action "that can be waived by the parties or the

court." *Francis,* 235 F.3d at 768 (citing *Pietras v. Bd. of Fire Comm'rs*, 180 F.3d 468, 474 (2d Cir. 1999). Thus, defendant's reliance on Fed. R. Civ. P. 12(b)(1) is misplaced to the extent that Title VII's time limits, which are subject to equitable modification, are not jurisdictional in nature.

Nevertheless, in reviewing an application under Fed. R. Civ. P. 12(b)(6), it is proper for this Court to consider the plaintiff's relevant filings with the EEOC and the affidavit she submitted in opposition to defendant's motion, none of which were attached to the complaint, because plaintiff relies on these documents to satisfy Title VII's administrative exhaustion requirements. *See Holowecki v. Fed. Express Corp.*, 440 F. 3d 558, 565 (2d Cir 2006) (construing a similar motion to dismiss a claim under the Age Discrimination in Employment Act). "[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment." *Id.* (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (internal quotation marks omitted). Therefore, the various documents submitted by the parties herein including plaintiff's submissions to DHR and EEOC, correspondence sent to or received from these agencies, and administrative determinations of the agencies are incorporated into the record to the extent necessary to obtain the relevant dates and procedural history. *See e.g., Gleason v. Dep't of Homeland Security*, 2007 WL 1597955, *3 (S.D.N.Y. June 1, 2007).

B.      Timeliness of Plaintiff's Title VII Claims

7

Defendant moves to dismiss all or the majority of plaintiff's Title VII claims herein on the ground that she failed to exhaust requisite administrative remedies. Because New York has its own agency to investigate claims of employment discrimination, the Division of Human Rights, it is a "deferral state" for purposes of Title VII. *Mohasco Corp. v. Silver*, 447 U.S. 807, 813-14 (1980); *Harris v. City of New York*, 186 F.3d 243, 247 n. 2 (2d Cir. 1999). Hence, in New York, a plaintiff must file an administrative charge within 300 days of knowing or having reason to know of the alleged discriminatory act. *See Harris*, 186 F.3d at 247 (holding that the statute of limitations runs "when [plaintiff] knew or had reason to know of the injury serving as the basis for his claim") (collecting cases). The charge may be filed with either the EEOC or the New York State Division of Human Rights. *See Butts v. The City of New York Dep't of Housing Preservation & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993), superceded by statute on other grounds as stated in *Hawkins v. 1115 Legal Services Care*, 163 F.3d 684, 693 (2d Cir. 1998). "This requirement functions as a statute of limitations ... in that discriminatory incidents not timely charged before the EEOC will be time-barred upon the plaintiff's suit in district court." *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir. 1998) (internal citations omitted).

Exhaustion of administrative remedies through the EEOC stands as "an essential element of Title VII's statutory scheme," *Butts,* 990 F.2d at 1401, and one with which defendant is entitled to insist that plaintiff comply in the absence of an excuse or waiver. To exhaust administrative remedies, a Title VII plaintiff generally must present her claims to EEOC as part of a timely filed EEOC "charge" for which he or she has received a right-to-sue letter. *See id.* The charge "shall be in writing and signed and shall be verified," 29 C.F.R. § 1601.9, and must at a minimum identify the parties and "describe generally the action or practices complained of." See id. §

8

1601.12(b).[2]  Pertinent EEOC regulations define the term "verified" as "sworn to or affirmed before a notary public, designated representative of the Commission, or other person duly authorized by law to administer oaths and take acknowledgments, or supported by an unsworn declaration in writing under penalty of perjury," 29 C.F.R. § 1601.3(a).  EEOC regulations further authorize plaintiffs to amend their charges "to cure technical defects or omissions, including failure to verify the charge[s]," and provide that such amendments "will relate back to the date the charge was first received." 29 C.F.R. § 1601.12(b).

In the present case, defendant contends that plaintiff failed to file her charge of discrimination within 300 days of the events giving rise to many of her claims and is thus time-barred from pursuing the present litigation.  Plaintiff asserts that although she did not file a formal charge of discrimination with EEOC until August 2003, she sent a completed "new charge questionnaire" to the agency in December 2002 which was within 300 days of the alleged discriminatory action complained of.  This questionnaire was signed but not notarized or sworn to under penalty of perjury and thus does not satisfy Title VII's requirement that an administrative charge be verified.  *See Buck v. Hampton Twp. Sch. Dist*., 452 F.3d 256, 260-61 (3rd Cir. 2006) (intake questionnaires signed under statement: "I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information and

---

[2]

The charge tells the EEOC what to investigate, provides it with the opportunity to conciliate the claim, and gives the charged party notice of the alleged violation. *See* 29 C.F.R. § 1601.14(a) (requiring EEOC generally to send copy of charge to charged party or respondent within ten days of its filing); *EEOC v. Shell Oil Co.*, 466 U.S. 54, 64 (1984) ("EEOC's investigative authority is tied to charges filed with the Commission; unlike other federal agencies that possess plenary authority to demand to see records relevant to matters within their jurisdiction, the EEOC is entitled to access only to evidence relevant to the charge under investigation.") (footnote and quotation omitted).

belief" not verified since they were not signed "under penalty of perjury" as required by Title VII and its accompanying regulations).

The record indicates plaintiff was keenly aware of the need to file timely her formal charge of discrimination given her express statement to that effect and her decision to fax the charge questionnaire to EEOC.  Specifically, in late December 2002, plaintiff explained to EEOC that she chose to fax her charge questionnaire to preserve her right to "include incidents" which occurred approximately 10 months or 300 days earlier in February 2002.  As a further matter, it is clear that neither EEOC nor plaintiff viewed her undated, unnotarized and unsworn charge questionnaire as a formal administrative charge of employment discrimination.  To wit, plaintiff told EEOC she "look[ed] forward to hearing from [the agency] in the near future to finalize the official charge" and EEOC told plaintiff to read and sign the formal charge and return it "as soon as possible."  Moroever, the Court notes that plaintiff in this case was clearly well-versed in the procedures of DHR and EEOC, having filed various claims over the course of her career with defendant.  Plaintiff offers no excuse or explanation for her failure to file the formal charge of discrimination until nearly eight months later.

Plaintiff nevertheless argues she is entitled to the benefit of the "relation back" doctrine in which a verified but untimely charge of discrimination "relates back" to an earlier unverified, but timely, charge with EEOC.  *See Thompson v. Fed. Res. Bank of New York*, 242 F. Supp. 2d 368, 371 (S.D.N.Y. 2003) (citing *Edelman v. Lynchburg Coll.*, 535 U.S. 106, 112-116 (2002)).  The question then is whether plaintiff's December 18, 2002, correspondence to EEOC along with her "new charge questionnaire" constitutes a "charge" within the meaning of Title VII such that the "relation back" doctrine would apply.  The Second Circuit recently addressed directly this issue

in *Holowecki, supra.* The court began with a summary of EEOC regulations concerning the requirements of a valid administrative charge:

> The EEOC has established interpreting regulations that specify the requisite information that must appear in a "charge." *See* 29 C.F.R. §§ 1626.3, 1626.6, 1626.8. The required content is minimal. For instance, a charge "is sufficient" when the EEOC receives "a ... writing" (or information that an EEOC employee reduces to a writing) from the person making the charge that names the employer and generally describes the allegedly discriminatory acts. *See id.* § 1626.8(b) (citing *id.* § 1626.6). According to the regulations, a charge also "should contain," but is not required to contain, other information such as the full contact information for the employer and the individual filing the charge, and a "clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices." *See id.* § 1626.8(a)(1)-(5).

440 F.3d at 566. The Second Circuit also noted with approval the various Circuits which have imposed a "manifest intent" rule which requires that "[i]n order to constitute a charge that satisfies the requirement of section 626(d), notice to the EEOC must be of a kind that would convince a reasonable person that the grievant has manifested an intent to activate the Act's machinery." *Id.* (citing *Bihler v. Singer Co.*, 710 F.2d 96, 99 (3d Cir. 1983); *see Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1319 (11th Cir. 2001) (citing proposition favorably); *Steffen v. Meridian Life Ins. Co.*, 859 F.2d 534, 542 (7th Cir. 1988) (same)).

In the present case, plaintiff sent EEOC an 8 page letter in December 2002 which detailed her various claims of unlawful discrimination. EEOC prepared a summary of plaintiff's claims in the draft charge it sent to her in January 2003. Plaintiff made minor changes to the draft charge prepared by EEOC but clearly referenced her 8 page letter as part of or descriptive of her claims. When EEOC received plaintiff's formal charge nearly eight months later in August 2003, the agency assigned a charge number and forwarded plaintiff's complaint to defendant for a response. It was only after receiving defendant's response that EEOC made the determination

11

that plaintiff's charge was not filed in a timely fashion.  Based on the entire record, in spite of the large and unexplained gap between the time that plaintiff initially contacted EEOC and completed a charge questionnaire and the time that plaintiff ultimately filed a formal charge, the Court is constrained to find that the law on the issue of the "relation back" doctrine favors plaintiff.   As in *Holowecki, supra*, the Court finds that plaintiff's December 2002, New Charge Questionnaire: 1) satisfied the statutory and regulatory requirements for what content must be included in a charge; and 2) communicated plaintiff's intent to activate EEOC's administrative process.  *See* 440 F.3d at 568.  Moreover, it is clear that plaintiff's December 2002 New Charge Questionnaire did actually activate EEOC's administrative process.

## IV.     CONCLUSION

Insofar as defendant's remaining arguments which relate to the timeliness of various acts or events referenced in plaintiff's administrative charge, the record is far from clear concerning when many of the alleged unlawful discriminatory acts or events occurred.  As stated by defendant, many of the events described in plaintiff's administrative charge are not accompanied by a date and/or time period.  Thus, it is impossible to discern at the present time which events occurred within 300 days of plaintiff filing her New Charge Questionnaire in December 2002, or which claims, if any, in the administrative complaint are subject to the tolling provisions of the "continuing violation theory," as alleged by plaintiff, *see Quinn,* 159 F.3d at 765, or which claims, if any, in plaintiff's present complaint are "reasonably related" to those in her administrative charge.  *See Butts*, 990 F.2d at 1402.  ir. 1993).  The Court expects that the material factual questions concerning the timing of the acts and events complained of will be clarified during the process of discovery following which the parties are free to file summary judgment motions if necessary to resolve the issue of timeliness of plaintiff's claims.

Based on the foregoing, it is hereby

ORDERED that defendant's motion to dismiss plaintiff's complaint is hereby DENIED without prejudice.

IT IS SO ORDERED.

Dated: September 27, 2007
Syracuse, New York

_____
Norman A. Mordue
Chief United States District Court Judge